## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Eide Bailly LLP,

    Plaintiff and Counter-Defendant,

v.

Michael Humphreys, Acting
Insurance Commissioner of the
Commonwealth of Pennsylvania, in
his capacity as the Statutory
Rehabilitator of Senior Health
Insurance Company of Pennsylvania,

    Defendant and Counter-Claimant.

**ORDER ADOPTING REPORT
AND RECOMMENDATION**

Civil File No. 22-03132 (MJD/SGE)

Lawrence M. Shapiro, Mark L. Johnson, Aaron P. Knoll, Emily M. McAdam,
Michelle Erickson Morrow, Greene Espel PLLP, Counsel for Plaintiff and
Counter-Defendant, Eide Bailly, LLP.

Heather L. Marx, Dexter R. Hamilton, Matthew J. Siegel, Michael Broadbent,
Cozen O'Connor and Leslie Miller Greenspan, Tucker Law Group, LLC,
Counsel for Defendant and Counter-Claimant, Michael Humphreys, Acting
Insurance Commissioner of the Commonwealth of Pennsylvania.

## I.   INTRODUCTION

The above-entitled matter comes before the Court upon the Report and

Recommendation ("R&R") of United States Magistrate Judge Shannon G. Elkins

1

dated January 31, 2026.  Magistrate Judge Elkins issued the R&R on Eide Bailly's motion for summary judgment, Eide Bailly's three motions to exclude expert testimony ("Daubert motions"), and the Rehabilitator's three Daubert motions.

The R&R recommends that the Court deny all the Daubert motions and that the Court grant Eide Bailly's motion for summary judgment.  The parties have filed objections to the recommendations.  Pursuant to statute, the Court has conducted a de novo review upon the record.  28 U.S.C. § 636(b)(1); D. Minn. LR 72.2(b).

Based upon that review, the Court overrules the parties' objections to the recommendations on the Daubert motions and the Rehabilitator's objections to the recommendation on the summary judgment motion; sustains Eide Bailly's objection to the recommendation on the summary judgment motion, and adopts the Report and Recommendation ("R&R") with modification.

## II.    FACTS

Before the Court begins its discussion, it must address Eide Bailly's Objection to the R&R's Reliance on Unsupported Facts.  (Doc. 176 at 2.)  Eide Bailly ("EB") states that Senior Health Insurance Company of Pennsylvania's

("SHIP's") briefs in response to EB's motions contained "numerous factual assertions without citations to affidavits or exhibits."  (Id. (citing Docs. 140 at 3-5; 141 at 4; 142 at 3-4; 143 at 3-4).)  EB argues that to "the extent the [R&R] relies on these unsupported factual recitations, it errs" and the Court should not consider SHIP's statements of facts that are not supported by citations to the record.  (Id.)[1]

Of the documents EB cites, only docket number 140 is cited in the R&R and the pages cited by EB are not the pages cited in the R&R.  As for any broader objection EB makes about "numerous" issues with SHIP's briefs, the Court understands how to weigh arguments and evidence.  This objection is overruled.

Accordingly, the Court adopts the Facts presented in the R&R as its own. See Eide Bailly, LLP v. Humphreys, No. 22-cv-3132 (MJD/SGE), 2026 WL 597791, at *1-3 for a recitation of the facts.

-----

[1] Both the Court and the parties variously use "SHIP," "PID" (for Pennsylvania Insurance Department), and "the Rehabilitator" to refer to plaintiff in this action, even though the Rehabilitator is the named plaintiff.  All of these entities acted (or arguably could have acted) at various times in this litigation, so use of all names is appropriate.

## III.   DISCUSSION

The Court first addresses objections to recommendations on the parties'

<u>Daubert</u> motions.  The Court then turns to objections to the recommendation that

the Court grant Eide Bailley's motion for summary judgment.

### A.   Eide Bailly's <u>Daubert</u> Objections

EB argues that SHIP's "purported" damages expert Lisa Kuklinski and

"purported" actuarial expert Carl Harris should be excluded from testifying at

trial.  (Doc. 176 at 5-13.)  EB also argues that the Court should limit the testimony

of SHIP's "purported regulatory expert James Wren."  (<u>Id.</u> at 13-14.)

### 1.   Federal Rule of Evidence 702 and <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.,</u> 509 U.S. 579 (1993)

Rule 702 of the Federal Rules of Evidence provides:

A witness who is qualified as an expert by knowledge, skill, experience,
training, or education may testify in the form of an opinion or
otherwise if:
>(a) the expert's scientific, technical, or other specialized
>knowledge will help the trier of fact to understand the evidence
>or to determine a fact in issue;
>(b) the testimony is based on sufficient facts or data;
>(c) the testimony is the product of reliable principles and
>methods; and
>(d) the expert has reliably applied the principles and methods to
>the facts of the case.

The role of trial courts is to serve as "gatekeepers to 'ensure that the proffered expert testimony is both relevant and reliable.'" Wagner v. Hesston Corp., 450 F.3d 756, 758 (8th Cir. 2006) (quoting Anderson v. Raymond Corp., 340 F.3d 520, 523 (8th Cir. 2003)).  In Daubert v. Merrell Dow Pharmaceuticals, Inc., the Supreme Court provided some general observations for the lower courts to consider in making determinations as to whether an expert's testimony is relevant and reliable, such as whether it has been tested, subjected to peer review and publication, the known or potential rate of error, and whether it is generally accepted. 509 U.S. 579, 592-95 (1993).

In Kumho Tire Company, Ltd. v. Carmichael, the Court extended the Daubert reasoning to non-scientist experts stating:

> We conclude that Daubert's general principles apply to the expert matters described in Rule 702.  The Rule, in respect to all such matters, establishes a standard of evidentiary reliability.  It requires a valid . . . connection to the pertinent inquiry as a precondition to admissibility.  And where such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question, . . . the trial judge must determine whether the testimony has a reliable basis in the knowledge and experience of the relevant discipline.

526 U.S. 137, 149 (1999) (internal quotations omitted and cleaned up).

5

Challenges to the factual basis of expert testimony go "to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion on cross-examination.  Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded."  Bonner v. ISP Tech, Inc., 259 F.3d 924, 929-30 (8th Cir. 2001) (quotation omitted).

### 2. Eide Bailly's Motion to Exclude the Proffered Expert Testimony of Lisa Kuklinski

The Rehabilitator retained Lisa Kuklinski, a practicing actuary, Fellow of the Society of Actuaries, member of the American Academy of Actuaries, and Managing Director at FTI in the Life and health actuarial team, to provide opinions regarding SHIP's damages.  (Ex. 52 ¶¶ 1, 5-7.)[2]

EB objects to the R&R's recommendation to deny its motion to exclude Ms. Kuklinski's expert testimony, arguing that she has no basis in her experience, training, or identified methodology to opine on how quickly an insurer like SHIP might have entered and progressed through rehabilitation as a result of a

---

[2] "Ex." refers to exhibits to the Declaration of Mark L. Johnson (Doc. 112).

different audit outcome.  (Doc. 176 at 5.)  EB also states that Ms. Kuklinski's opinions must be excluded as speculative, unsupported, and based on an unreliable method because they are based solely on her own ipse dixit, which is "uninformed by any experience, training, or study of other comparable situations" and are also based on the opinions of SHIP expert Carl Harris.  (Id. at 6.)  Finally, EB argues that Ms. Kuklinski should not be permitted to testify to matters that are "mere arithmetic, within the ken of the ordinary juror."  (Id. at 7.)

The Court disagrees.  First, the R&R is correct that Ms. Kuklinski's credentials and over 30 years' actuarial experience focusing on insurance companies and working on other "substantial rehabilitation events" qualifies her to offer her expert opinion as to the extent of damages.  (R&R at 13.)  In addition, the idea that the matters upon which Ms. Kuklinski will testify are "simple arithmetic" is without merit and, as the R&R states, "belied by a cursory review of the report itself."  (Id.)  The rest of the objections go to the weight, and not the admissibility, of the opinion.  Accordingly, the objection is overruled.

7

### 3.   Eide Bailly's Motion to Exclude the Proffered Expert Testimony of Carl Harris

The Rehabilitator retained Carl Harris, a consulting actuary and principal of Oliver Wyman Actuarial Consulting, Inc., who has worked in the accounting industry since 1979; is a Fellow of the Society of Actuaries; member of the American Academy of Actuaries; and a Fellow of the Conference of Consulting Actuaries, among other professional affiliations, to provide specific opinions regarding SHIP's damages.  (Ex. 51 App'x A.)

EB objects to the R&R's recommendation to deny its motion to exclude the expert testimony of Mr. Harris, arguing that his independent reserve analysis is irrelevant and could be prejudicial because SHIP's negligence claim is based on how EB responded to Lewis & Ellis's concerns with Milliman's work, <u>not</u> based on a claim that "<u>all</u> of SHIP's actuarial assumptions and methods were indefensible and that SHIP's reserves were understated by more than a billion dollars, and that Eide Bailly's audit missed all of this."  (Doc. 176 at 10, 11 (arguing that "it would be highly prejudicial to present the jury with an opinion that <u>dozens</u> of SHIP's actuarial assumptions were fatally flawed (when that was not L&E's view and is not a claim before the Court)" (emphasis in original).)

8

However, as the R&R found, Mr. Harris's "reserves estimates and independent evaluation address not only concerns raised by L&E, but also 'those that should otherwise have been considered by Eide Bailly.'" (R&R at 15 (quoting Doc. 133 (Br. Opp. to Mot. Exclude Harris Expert Test.) at 8) (cleaned up).)

Not only is this testimony relevant regarding the accuracy and reasonability of Milliman's calculations, but also regarding whether EB's response to L&E's concerns with Milliman's work was reasonable. Therefore, Mr. Harris's testimony will likely aid the jury in deciding this issue.

Mr. Harris determined that an average 60.8% rate increase was actuarially justified based on his actuarial evaluation of SHIP's historical and projected premium and claims experience that would have been used as of December 31, 2016. (Ex. 51 ¶ 2.3.) He further opined that 100% of policy holders would accept and pay these new rates. (Id. ¶ 4.2.1.4.) EB argues that not only did Mr. Harris adopt Ms. Kuklinski's timing assumptions, he added his own opinion that the 60.8% rate increase could have been actuarially justified by the end of 2016 based on his independent reserving methodologies and deficiency calculation, which was belied by "undisputed reality" and the real-life results of SHIP's

rehabilitation. Very few policy holders paid any rate increase, even fewer saw rate increases approaching or exceeding 60.8%, and it took years, not months, for SHIP's rehabilitation to generate new revenues or policy modifications.  (Doc. 176 at 12.)

The Court overrules these objections.  Mr. Harris set forth the methodology that he used to reach his opinions.  Disagreements over the factual basis underlying Mr. Harris's opinion go to the weight, not the admissibility, of this evidence.  Mr. Harris's opinions could help a jury determine the issues of liability and damages.  After a de novo review, the Court cannot say that the opinion is "so fundamentally unsupported that it can offer no assistance to the jury."  Bonner, 259 F.3d at 929-30; Evans ex rel. Evans v. Krook, 680 F. Supp. 3d 1080, 1104 (D. Minn. 2023).  This objection is overruled.

### 4. Eide Bailly's Motion to Limit the Proffered Expert Testimony of Regulatory Expert James Wrynn

The Rehabilitator retained James Wrynn, a licensed attorney and a Senior managing director in the Global Insurance Services practice of FTI Consulting, Inc. ("FTI") with expertise in insurance matters, who also has extensive experience litigating insurance issues since 1982.  (Ex. 57 ¶¶ 2-3.)  Mr. Wrynn has

served in several roles in New York State entities, including as Executive Director of the New York State Insurance Fund in April 2009, superintendent of the New York State Department of Insurance, and First Deputy Superintendent of the New York State Department of Financial Services. (Id. ¶¶ 4-7, App'x 1.) He has also worked in the private sector on a variety of insurance and reinsurance matters. (Id. ¶¶ 8-14.)

> Mr. Wrynn opines that audit opinions are of critical importance [to regulators] in assessing the financial condition of the insurer. He further opines that if Eide Bailly had issued a modified opinion or not signed any audit opinion in June 2016, PID could have taken "prompt regulatory action." Mr. Wrynn also opines that PID's actions after June 2016 would have significantly changed had there been a different audit outcome. In his deposition testimony, Mr. Wrynn stated that it was "unlikely" that SHIP would have been placed into rehabilitation within six months. He also testified that a different audit outcome might have caused PID to examine SHIP sooner.

(R&R at 10-11 (citations omitted) (brackets in original).)

Although EB states that Mr. Wrynn is "generally qualified to testify as an expert on insurance regulation," that his opinions will likely be helpful to the jury; and that he should be allowed to testify regarding how unlikely it was that SHIP would have entered rehabilitation within six months and that the claim that SHIP would have generated new premium dollars within 18 months of a

11

different audit was "hypothetical without facts and circumstances to base it on," but that he should not be allowed to testify beyond that.  (Doc. 176 at 13 (quoting Doc. 142 (EB Reply Br. citing Wrynn Dep.) at 14).)  EB asserts that Mr. Wrynn's other opinions are "too vague, ambiguous, and potentially misleading to be allowed at trial."  (Id. (citations omitted).)  Thus, EB objects to the recommendation to deny its motion.

The Court disagrees.  To the extent EB rests its objections on the fact the Mr. Wrynn has never seen a modified audit report or placed a long-term insurance company into rehabilitation, the Court agrees with the R&R that Mr. Wrynn's other experiences, especially those serving on a state body that ensured the solvency of insurance carriers, his long-time experience with insurance regulation, including the importance of statutory audits, render him qualified to testify to the opinions included in his report.  (R&R at 12.)  As Magistrate Judge Elkins said, EB's view "narrows what courts accept as relevant experience beyond the vanishing point."  (Id. at 11.)  EB's objections go to weight not admissibility.  This objection is overruled.

## B.     The Parties' Objections to Recommendations on the Motion for Summary Judgment

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact.  Celotex, 477 U.S. at 323.  "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case."  Amini v. City of Minneapolis, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 252 (1986)).

In its remaining counterclaim, SHIP asserts professional negligence/accounting malpractice against EB.  (Doc. 30 at 44.)  The R&R recommends granting EB's motion for summary judgment on this claim.  For purposes of the motion, EB conceded the elements of duty and breach.  (R&R at 25.)  The R&R recommends finding that the Rehabilitator had not established that a genuine issue of material fact existed on the issue of but-for causation

13

because the evidence that he relies on to establish causation is speculative.  On the other hand, the R&R recommends finding that the Rehabilitator "produced expert testimony and analysis that gives a basis from which a jury could determine damages" and a genuine issue of material fact exists on that issue.

### 1. The Rehabilitator's Objections to the R&R's Conclusion that no Genuine Issue of Material Fact Exists on the Issue of Causation

#### a. The R&R Decision

After an extensive discussion, the R&R recommends finding that PID had not established that a genuine issue of material fact existed on the issue of but-for causation because the evidence that it relies on to establish causation is speculative.  (Id. at 25-33.)  The R&R concludes that there is "no concrete evidence as to what actually would have happened but for Eide Bailly's alleged negligence."  (Id. at 30-31 (citing testimony of Patrick Cantillo, who stated that if EB had notified regulators in 2016 of SHIP's true financial condition, then "corrective action would have been followed either by management or regulators," that "management would have felt compelled to take corrective action," but that it would "call for speculation" to comment on what corrective action would "look like").)  The R&R also states that other expert testimony

14

offered by the Rehabilitator was not concrete evidence as to what PID's course of action would have been or how it would have exercised its discretion if EB had issued a modified audit opinion in 2016. (Id. at 31-32 (citing Wrynn's test. providing that "the PID was not required to place SHIP in rehabilitation in 2016; it could have exercised its discretion to begin an investigation instead" (citing Ex. 13 at 24-25, 34); Kuklinski test. that "PID could have exercised its discretion by taking action other than immediately placing SHIP in rehabilitation" (citing Ex. 10 at 108-09) and stating that Kuklinski calculated damages "on the premise that, but for Eide Bailly's failure to perform a proper audit, . . . management and the PID would have sooner become aware of SHIP's true financial condition . . . and would have sooner been placed under PID control or taken other remedial measures," which was merely an "opinion based on the premise that SHIP would have drawn PID's attention sooner," and "is not itself evidence of how PID would have acted" ) (citing Ex. 52 at 9)).)

Relatedly, the R&R also holds that there is no concrete evidence that the outcome would have been better for SHIP if Eide Bailly had issued a modified audit report in 2016. (Id. at 32 (noting that although the Rehabilitator states that

15

if EB would have reported that SHIP's risk-based capital level was below 70%, PID would have been required "to take immediate control of the company <u>by operation of law</u>," SHIP expert James Wrynn testified that in that situation, PID would not have to immediately put SHIP into rehabilitation, but that the Commissioner could choose a different tool) (emphasis in original).)  The R&R states that given these various options, it is up to the Rehabilitator to "untangle the multiple decisions that result in a single net-loss figure and explain how that figure would have changed 'but for' some alleged negligence." (<u>Id.</u> (quoting <u>Christians v. Grant Thornton, LLP</u>, 733 N.W.2d 803, 813 (Minn. Ct. App. 2007)).)

Accordingly, the R&R concluded that the Rehabilitator's evidence is speculative as to what action PID <u>could</u> have taken or even that PID <u>might</u> have been motivated to act sooner.  Therefore, the evidence was insufficient to establish a genuine issue of material fact regarding causation.

### b.  The Rehabilitator's Objections

The Rehabilitator first argues that the R&R rests on an unduly restrictive view of "but for causation" and  applies a causation standard that is inconsistent with Minnesota law and the summary judgment framework.  (Doc. 177 at 3-4.)

16

He argues that SHIP is not required to prove with certainty the precise regulatory action PID or management would have taken absent EB's wrongdoing. Rather, it need only present evidence from which a reasonable jury could conclude that EB's unqualified 2015 audit was a substantial factor in delaying intervention and thereby worsened SHIP's financial condition. (Id. at 4 (citations omitted).) The Rehabilitator states that it has satisfied this burden. (Id.) The Rehabilitator argues that on summary judgment, he is not required to eliminate all uncertainty, but need only present evidence that EB's misconduct "materially altered the decision-making landscape to the plaintiff's detriment." (Id. at 8 (citing Jerry's Enters., Inc. v. Larkin, Hoffman, Daly & Lindgren, Ltd., 711 N.W.2d 811, 819-20 (Minn. 2006)).) He asserts that the injury alleged is not the failure to impose one specific regulatory outcome at a specific moment, but rather it is the loss caused by years of regulatory delay (i.e., "SHIP's argument is not that PID had only one lawful option, but that [EB's] negligence foreclosed a range of earlier and more effective responses that would have narrowed SHIP's funding gap"). (Id. at 8-9.)

17

The Rehabilitator further argues that the R&R misapplies Minnesota precedent, citing to Minnesota cases stating that on summary judgment, it is not the Court's job to weigh evidence or draw inferences and that fact questions preclude summary judgment.  (Id. at 9 (citations omitted).)  Specifically, he asserts that the facts and evidence in this case are analogous to those of Jerry's and therefore the result should be the same.

The R&R discussed this case in depth.  In Jerry's, the Larkin Hoffman law firm represented Jerry's Enterprises in the purchase of undeveloped land.  711 N.W.2d at 815.  The R&R went on to describe what happened after that:

> Part of the agreement included a buy-back option, where the seller could repurchase the entire property if Jerry's Enterprises had not begun construction of improvements within two years of the purchase.  Larkin Hoffman did not discuss the provision with Jerry's Enterprises, and the closing documents did not include the buy-back option.  Just over two years after Jerry's Enterprises purchased the land, the seller acted to exercise his buy-back option.  Jerry's Enterprises had to defend against a suit brought by the seller, and when it lost, paid the seller $4.2m to retain ownership of the property.  Jerry's Enterprises then sued Larkin Hoffman for malpractice.  The Minnesota Supreme Court determined that Jerry's Enterprises had provided enough  evidence to create a fact question as to whether, but for Larkin Hoffman's alleged negligence, Jerry's Enterprises would have obtained a more favorable result in the transaction.  Jerry's Enterprises argued that if Larkin had informed Jerry's of the possible cloud on its title to the property, it would have

18

begun construction within the two-year time period and prevented [the seller] from exercising his buy-back option.  The president of Jerry's Enterprises testified at trial that had he known of the possible survival of the buy-back option, Jerry's would have ensured that the option was extinguished, either by beginning construction or otherwise.

(R&R at 29 (brackets in original) (citing Jerry's, 711 N.W.2d at 815-820).)

### c.  Analysis

The Court disagrees with the Rehabilitator.  First, the R&R applies the proper legal causation standard for a professional malpractice case.  Christians v. Grant Thornton, LLP, 733 N.W.2d 803, 813 (Minn. Ct. App. 2007) (holding that in a professional malpractice case (auditor malpractice in that instance), the plaintiff "needed to introduce concrete evidence of what [the plaintiff] would have done but for [the defendant's] negligence and what those actions would have reasonably produced").

The Rehabilitator distinguishes the instant case from Christians because the evidence asserted in that case was "paper thin" compared to the Rehabilitator's evidence that "identified specific regulatory consequences tied to statutory insolvency thresholds and showed that PID would absolutely have acted [and] identified what PID did in 2019 and 2020 when faced with financial

19

results exactly like those concealed by Eide Bailly in 2016." (Doc. 177 at 11.)

However, the Rehabilitator's expert Patrick Cantilo testified that he could only

speculate as to how the PID might have responded to a different EB audit result.

(Ex. 3 (Cantilo Dep.) at 37-39.) In addition, Expert Wrynn testified that "a

modified [audit] report in and of itself . . . would not be enough to put someone

right into rehabilitation or liquidation. . . . I never said that in my report. . . . That

is not my opinion." (Ex. 13 (Wrynn Dep.) at 13; see also Ex. 10 (Kuklinski Dep.) at

184-85 (the 100% rate increase acceptance rate was an "assumption" to simplify

damages calculations), 108-09 (PID had discretion to take action other than

immediately placing SHIP into rehabilitation); Ex. 8 (Harris Dep.) at 292-93

(Harris accepted the 100% assumption for calculation purposes without opining

as to whether all insureds would have agreed to this).)

For the reasons articulated in the R&R, this case can be distinguished from

Jerry's. The business owner in Jerry's articulated a specific course of action that

he would have taken had he known about the buy-back provision. 7ll N.W.2d at

820. To the contrary, the Rehabilitator's experts only provide opinions about

actions that the PID could have taken had EB issued a modified audit opinion in

20

2016 because the PID was not required to put SHIP into rehabilitation in 2016.

The menu of options the experts state that PID and SHIP could have chosen and

the outcomes are too speculative.  There is nothing in the record establishing that

PID would have exercised its discretion to immediately put SHIP into

rehabilitation if EB had issued a modified audit report in 2016 or exercised its

discretion to take any other action.[3]

For all the reasons articulated in the R&R, this objection is overruled.

### 2. Eide Bailly's Objection to the R&R's Conclusion that a Genuine Issue of Material Fact Exists on the Issue of SHIP's Damages

Despite finding that "the Rehabilitator's proffered damages evidence

amounts to speculation [as to] how quickly SHIP would have entered

rehabilitation, how quickly the rehabilitation would have progressed, and how

quickly its newly calculated premium increases could have been approved, and

how quickly those new premiums would have generated revenue," the R &R

---

[3] This discussion does not even mention the variables potentially introduced by actions taken internally by SHIP management such as cutting costs or other measures because the R&R does not discuss these variables.  (See Doc. 178 (EB's Resp. to Obj. to R&R) (discussing measures SHIP might have taken).)

21

concludes that the Rehabilitator "produced expert testimony and analysis that gives a basis from which a jury could determine damages." (R&R at 35 (citing Unique Sys., Inc. v. Zotos Int'l, Inc., 622 F.2d 373, 378 (8th Cir. 1980) (stating that "[t]he law does not require mathematical precision in the proof of loss but only proof to a reasonable, although not necessarily absolute, certainty").)

Therefore, the R&R concluded that the Rehabilitator had demonstrated that a genuine issue would exist for a trier of fact to conclude what damages SHIP has suffered. (Id.) This made no difference, however, to the ultimate recommendation to grant EB's motion for summary judgment because there exists no genuine issue of material fact on the issue of causation.

EB objects to this finding, arguing that it "cannot be squared with the R&R's correct finding that SHIP's alleged damages are impermissibly speculative." (Doc. 176 at 2 (emphasis omitted).)

> Speculative, remote, or conjectural damages are not recoverable at law. A claimant must present competent evidence sufficient to permit a jury to conclude not only that the defendant's negligence caused damages, but evidence tending to show what would have been the outcome had the negligence not taken place. . . . There is no general test for determining whether damages are remote or speculative, so these matters are generally left to the judgment of the district court. The law does not require mathematical precision in

22

proof of loss, but only proof to a reasonable, although not necessarily absolute, certainty.

Courts apply this as best they can under the circumstances of each case. When a plaintiff improperly attributes all losses to a defendant's illegal acts, despite the presence of significant other factors, the evidence does not permit a jury to make a reasonable and principled estimate of the amount of damage. The claimant must produce evidence that would permit reasonable jurors to reach a nonspeculative conclusion about damages. Damages claims based on "sheer speculation" and an "unsubstantiated, self-serving prediction" of foregone profits are not recoverable. Additionally, Minnesota law does not recognize deepening insolvency as a theory of damages.

(R&R at 33-34 (citations omitted) (cleaned up).)

EB asserts that SHIP proffers no admissible evidence, evidence from people with first-hand knowledge for example,

that a different audit result would <u>in fact</u> have caused [PID] to force SHIP into immediate rehabilitation, that the Pennsylvania courts would then <u>in fact</u> have promptly approved a rehabilitation plan involving rate increases, and that SHIP's insureds would then <u>in fact</u> have started paying massive new rates on an accelerated timeframe.

(Doc. 176 at 3 (emphasis in original).) EB states that even SHIP's own regulatory expert, James Wrynn, rejects these claims. (<u>Id.</u> (citing Doc. 142 at 14-15).) Thus, EB states that SHIP lacks evidence from which a trier of fact could assess and award damages and EB is entitled to summary judgment on this issue. (<u>Id.</u> at 4.)

23

The Rehabilitator responds that the R&R recognized that its experts Carl Harris and Lisa Kuklinski "used recognized actuarial methodologies, industry data, and SHIP-specific experience to quantify damages." (Doc. 179 at 3.) The experts "supported their conclusions with long-standing industry approaches to rate increase modeling and reserve adequacy," which is not "the kind of conjectural or 'self serving prediction' rejected in cases cited by Eide Bailly and in the R&R." (Id. & n.2 (citing Christians, 733 N.W.2d 803; Sievert v. First Nat'l Bank in Lakefield, 358 N.W.2d 409 (Minn. Ct. App. 1984)).)

The Rehabilitator argues that disagreements with these assumptions about timing, regulatory response, and policyholder behavior and EB's competing theory of how damages should be calculated is the kind of difference of opinion that should be resolved at trial. (Id. at 3-4 (citing Olson v. Naymark, 225 N.W. 275, 275 (1929) ("When a breach is committed [the law] is inclined to accept the challenge of the wrongdoer that damages cannot be ascertained; and within reasonable limits it will make an effort to ascertain them through the jury or other tribunal trying facts. For that purpose there are courts and juries").

In <u>Christians</u>, the Minnesota Court of Appeals rejected a trustee's claim for "[possible] lost profits . . . if it can be determined that a successful reorganization under Chapter 11 would have been feasible had the case been filed shortly after receipt of accurate audited financial statements in 1997." 733 N.W.2d at 812 (ellipses in original). The court held that "[w]ithout a reasonable prediction of what Technimar's financial results would have been but for Grant Thornton's alleged malpractice, the trustee's claims are too remote or speculative." <u>Id.</u> (citations omitted). Likewise, in <u>Sievert</u>, the Court reversed a damages award because, <u>inter alia</u>, many of the damages were too uncertain and speculative. 358 N.W.2d at 415. The damages rejected on these grounds were not supported by any expert testimony. Accordingly, these cases are not directly on point with our case in which SHIP's damages claims are supported by expert evidence.

That being said, although the Court agrees with the R&R that this is a close issue, the Court disagrees with the R&R's conclusion that despite that SHIP and its experts speculate as to how quickly all the following relevant events would have happened, if at all: 1) SHIP would have entered rehabilitation; 2) the rehabilitation would have progressed; 3) its newly calculated premium increases

25

could have been approved, and 4) those new premiums would have generated revenue, SHIP's experts still proffer testimony and analysis containing a sufficient basis from which a jury could determine damages.  (R&R at 35.)

After conducting a de novo review of the record, the Court is convinced that SHIP's damages rest on unsupported speculation that the listed actions could have happened.  The experts are not unified in their opinions as to when or whether these actions would have occurred.  Rather, the speculative nature of the evidence that all of these things could have happened or, as the Court discussed regarding causation, that some other series of things could have happened, means that a trier of fact cannot assess and award damages.  While the Court realizes that proof of loss need only be established to a reasonable, although not necessarily absolute, certainty, the evidence before the Court is too speculative to satisfy even that standard.  See Unique Sys., 622 F.2d at 378.

Accordingly, the Court sustains this objection.  Summary judgment will be granted with this modification.

### 3.  In Pari Delicto

The equitable doctrine of in pari delicto is an equitable defense that "embodies the principle that a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing." (R&R at 23 (quotation omitted).)  In Minnesota, the defense bars recovery "when the plaintiff's fraud was no less than that of the defendant." (Id. (quotations omitted).)

The parties disagree as to how the Rehabilitator, who was appointed under Pennsylvania law, should be treated under Minnesota law and whether the in pari delicto defense applies.  (Id. at 24.)  The R&R did not resolve the issue because it decided summary judgment on other grounds.  (Id. at 25.)

The Rehabilitator asserts that the R&R properly declined to expand Minnesota jurisprudence on the in pari delicto defense.  (Doc. 179 at 5-7.)  EB agrees that the Court need not reach this issue if it grants EB summary judgment on other grounds.  (Doc. 176 at 5.)  Thus, the Court declines to reach this issue.

## IV.   ORDER

Based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1. The Court **ADOPTS as modified** the Report and Recommendation of United States Magistrate Judge Shannon G. Elkins dated January 31, 2026 **[Doc. 175]**;

2. Plaintiff Eide Bailly's Motion for Summary Judgment **[Doc. 92]** is **GRANTED as detailed herein**;

3. Plaintiff Eide Bailly's Motion to Exclude the Proffered Expert Testimony of Carl Harris **[Doc. 97]** is **DENIED**;

4. Plaintiff Eide Bailly's Motion to Exclude the Proffered Expert Testimony of Lisa Kuklinski **[Doc. 102]** is **DENIED**;

5. Plaintiff Eide Bailly's Motion to Exclude the Proffered Expert Testimony of James Wrynn **[Doc. 107]** is **DENIED**; and

6. Defendant Michael Humphreys' Motion to Exclude Expert Testimony of Tucker, Gustafson, and Cohen **[Doc. 117]** is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  March 31, 2026                    s/Michael J. Davis
                                          Michael J. Davis
                                          United States District Court

28